IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SIDNEY COLEMAN,

    Plaintiff,

v.

DAVID J. MAHONEY and
DANE COUNTY,

    Defendants.

OPINION AND ORDER

Case No. 18-cv-902-wmc

*Pro se* plaintiff Sidney Coleman is proceeding in this lawsuit under 42 U.S.C. § 1983, against Dane County and its former sheriff, David J. Mahoney, on a claim that he was exposed to lead in the drinking water at the Dane County Jail in 2018 and 2019, which he alleges caused him severe headaches, vomiting, irritability, memory loss, sleep problems and aggressive behaviors. Before the court is defendants' motion for summary judgment (dkt. #43), which the court will grant.

UNDISPUTED FACTS[1]

**A. Dane County Jail 2016 lead remediation efforts**

The Dane County Jail consists of three facilities: part of the City-County Building; the William H. Ferris, Jr. Center; and the Public Safety Building. The City-County Building was constructed in the mid-1950's, with the jail location on the sixth and seventh floors. The William H. Ferris, Jr. Center was constructed as a Huber Law facility in 1983, then expanded in 1992. Finally, in 1994, the Public Safety Building was constructed,

---

[1] Unless otherwise noted, the court finds the following facts undisputed and material when viewed in the light most favorable to plaintiff as the nonmoving party.

which includes 400 beds, as well as office space for the Dane County Sheriff's Department and Department of Emergency Government.

In 2014, Sheriff Mahoney renewed efforts encouraging Dane County Board members to consider building a new jail, citing concerns about the existing jail. Starting in 2016, Dane County officials also took steps to address concerns about the drinking water at the jail. In particular, on May 17, 2016, over two years before plaintiff Coleman's first stay at the jail, a consultant team released a Preliminary Report as part of a Dane County Jail Updates Summary. That report indicated, but did not confirm, that lead may be present in the water supply of the jail due to the age of its original facility. The Dane County Public Health -- Madison / Dane County next conducted lead testing of its water supply, and on July 29, 2016, 20 samples of water were taken randomly from cellblocks in the oldest facility, the City-County Building. On August 16, the jail was notified that three of the twenty random samples were "slightly elevated" above the 15 $\mu$g/L level recommended by the EPA.

As a result, in August 2016, Dane County decided to test all consumable water sources at the jail for lead. The County also decided to install water filtration systems across the entire cold water supply for the City County Building. On August 19, while awaiting the installation of the water filtration systems, signs were also posted at the jail, which stated the following:

> While we are exploring options for the replacement of the City-County Building Jail, many systems are being tested. In addition, we have received concerns from inmates. As we test these systems, we ask for your patience.

2

> In the next couple of weeks, we will be collecting water samples overnight. Public Health recommends that the water be run for 1-2 minutes or until it gets cold prior to drinking. They recommend that you do not use hot water for consumption.

(Brockmeyer Aff. (dkt. #47) ¶ 13.)[2] Later, the jail decided to install filtration systems for both hot and cold water.

From August to October 11, 2016, all consumable water sources at the jail were tested for lead. Those results showed that less than 5% of the cells in the jail tested for lead levels slightly above the EPA recommendation. In October 2016, the County decided to implement a policy to: (1) affix stickers above all water fountains, reminding inmates to allow the water to run for two minutes before drinking; (2) install filters on fountains that tested with higher levels of lead; and (3) replace fixtures and piping throughout the jail to mitigate potential sources of lead. In November 2016, Hooper Plumbing also began installing water filtration systems through the jail, including both hot and cold water supplies. Since installing the water filtration systems, the water is tested quarterly or bi-annually, and has never shown lead levels above the recommended 15 $\mu$g/L level. Although there has been no question about the safety of the water supply since that time, some of the signs posted throughout the jail instructing inmates to run water before consumption have remained posted, simply because they have not been removed by jail staff.

---

[2] Defendants explain that because the water system at the jail runs through copper piping that may have lead joints, lead may dissolve when the water is still, but allowing the water to run for a few minutes reduces the possibility of lead being present in the water, as apparently does using cold water over hot.

3

### B. Coleman's claimed lead exposure and injuries

Coleman was an inmate at the Dane County Jail from July 7, 2018, until October 17, 2018, and again from February 15 to February 20, 2019. Coleman alleges that there was lead in the water supply in the City-County Building, and he got sick from drinking the water. Coleman also claims that he was very irritable during his stay at the jail, which he attributes to his consumption of lead from the drinking water.

During his deposition in this case, Coleman admitted seeing and abiding by the signs at the Dane County Jail directing inmates to run the water for two minutes prior to drinking it. Coleman further acknowledges that Dane County placed water filters on the drinking fountains at the jail. Coleman was unable to recall whether he sought treatment from a medical professional for injuries or illness related to lead, and further testified that he has never been diagnosed with a lead-related illness and has never been told he has elevated levels of lead in his blood. Indeed, Coleman does not recall ever taking a blood-lead test.

Although Coleman claims to have done research about and studied lead poisoning, he admits having no formal expertise or education in lead levels or water quality. Similarly, Coleman has not tested the lead levels in the water at the Dane County Jail, nor has anyone tested the water on Coleman's behalf. Nevertheless, Coleman complained in a grievance about lead in the water, and he appealed the denial of his grievance. Coleman never spoke with Sheriff Mahoney about his complaints.

OPINION

In seeking summary judgment, defendants acknowledge that plaintiff was a pretrial detainee and convicted prisoner at different times during his 2018 and 2019 periods of confinement at the Dane County Jail. Pretrial detainees are governed by the due process clause of the Fourteenth Amendment, *Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015), while claims by sentenced prisoners are governed by the cruel and unusual punishment clause of the Eighth Amendment, *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994). Since plaintiff's status varied, the court considers his claims under both standards.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon prison officials the duty to provide prisoners "humane conditions of confinement." *Farmer*, 511 U.S. at 832. To constitute cruel and unusual punishment, conditions of confinement must be extreme. *Id.* To demonstrate that prison conditions violate the Eighth Amendment, therefore, a plaintiff must present evidence that satisfy a test involving both an objective and subjective component. *Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir. 1994). The objective analysis focuses on whether prison conditions were sufficiently serious, so that "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," *Farmer,* 511 U.S. at 834, or "exceeded contemporary bounds of decency of a mature, civilized society," *Lunsford,* 17 F.3d at 1579. The subjective component requires proof that prison officials acted wantonly and with deliberate indifference to a risk of serious harm to plaintiff. *Id.*

Under the Fourteenth Amendment, a plaintiff must similarly show that "the severity and the duration of the conditions experienced were so significant . . . that they violated

5

the Constitution." *Hardeman v. Curran*, 933 F.3d 816, 824 (7th Cir. 2019). Under that test, a plaintiff must demonstrate that "(1) the conditions in question are or were objectively serious (or if the claim is for inadequate medical care, his medical condition is or was objectively serious); (2) the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and (3) the defendant's actions were objectively unreasonable—that is, "not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose." *Id.* at 827 (Sykes, J., concurring).

Here, the evidence of record does not support a finding in plaintiff's favor with respect to the objective element of his claim, whether analyzed under the Eighth or Fourteenth Amendment. Defendants acknowledge testing in 2016 demonstrated that *some* of the water sources (less than 5%) had lead present at levels slightly above the EPA recommendations. Even at *that* time, however, the jail posted warnings to the inmates (1) informing them of this risk of lead exposure and (2) encouraging them to take steps to protect themselves -- running cold water for a couple of minutes before drinking and avoiding drinking hot water altogether. Moreover, while these steps were intended to ameliorate risks of lead exposure in the *short term*, the jail also improved its filtration systems in the long term. Defendants further presented evidence that more recent testing shows these additional steps have worked, with all water sources now testing below the EPA recommendations, and it is undisputed that the signs from 2016 were still up in 2018 when plaintiff was being held, *not* because further testing showed elevated lead levels in the water, but simply because jail staff had not removed them. Finally, beyond his stated belief that his physical discomfort and irritability while at the jail were caused by his consumption

6

of lead-contaminated water, plaintiff has *no* evidence to support a finding that he was actually exposed to lead in water during either period of confinement at the jail, much less that exposure caused his symptoms, meaning a jury would have to speculate to find that conditions were extreme or objectively serious. To the contrary, given that the undisputed facts demonstrate that there was virtually no risk of lead exposure by 2018 or 2019 when plaintiff was confined at the jail, a reasonable jury would almost certainly conclude the opposite.

Even assuming that plaintiff had come forward with evidence sufficient to create a question of fact as to the safety of the drinking water at the jail in 2018 and 2019, plaintiff has similarly failed to prove that *any* jail or Dane County employees (and certainly not former Sheriff Mahoney) had been made aware of the continued presence of lead in some of the water sources by 2018 and failed to undertake additional efforts to mitigate their risk. Thus, actions taken *in 2016* to test the water system, advise inmates to let the water run, and to install a water filtration system provide no basis to support a finding of deliberate indifference or objective unreasonableness by any jail or Dane County officials as of 2018 and 2019 when plaintiff spent limited periods at the jail.[3]

Accordingly, the court must grant defendants' motion and enter judgment in their favor.

---

[3] Defendants offer other reasons for summary judgment in their favor, including the lack of evidence of personal involvement on the part of Mahoney or a policy, custom or practice to support a *Monell* claim against Dane County, but the court need not address these arguments in light of its findings that plaintiff failed to show that the conditions were either so extreme or objectively unreasonable to constitute a constitutional violation, or known to be by 2018.

7

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment (dkt. #43) is GRANTED.

2. The clerk of court is directed to enter judgment in defendants' favor and close this case.

Dated this 23rd day of July 2021.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge